A.J. Kung, counsel for appellant. John A. Fortin, counsel for appellee. Okay, we'll take the morning, we'll take appellant first. A.J. Kung, do you want to reserve some time for rebuttal? I do, Your Honor. I'd like to reserve five minutes, please. Five minutes, okay. Go ahead, please. In light of the fact that I have already set forth all of the arguments in the briefs and in light of the admonition from the court to not merely recite our briefs, I just want to do a simple recap of what I think are the most salient points to the appeal. First and foremost, I want to stress to the panel that sports does have standing to bring this appeal, both as a creditor. Admittedly, no proof of claim and no amended schedule had been filed at the time my appellate brief was filed. However, the time for filing proof of claims had not yet lapsed at that time. That has been resolved, and I submit to the panel that there is no dispute as to whether or not sports is a creditor based upon the filings with the court thus far. You may hear arguments from SBC appellee that they believe that the proof of claim is inappropriate or should be disregarded somehow, but there's been no filing to that, and as it stands before the panel today, sports is a creditor with a proof of claim on file with the corresponding amended schedule debtor acknowledging sports as a creditor and bank statements from the into debtors' accounts. I'm sorry. You said the debtor amended schedules to list that claim? Okay. Thank you. They did, Your Honor. Okay. In short, sports seeks to vacate the order authorizing the sale of certain assets from Debtor Gaming's estate to SBC on four primary bases. One, we submit that the matter was heard on order-shortening time inappropriately. Two, we submit that the motion itself was never served. Three, we believe that the trustee failed to meet his burden to show that the sales price that he ultimately agreed upon and sought approval for was the best and most optimal price to the estate, and fourth, we believe that the funding of good faith was a rubber stamp by the judge and that there was no evidence in the record that the motion was brought in good faith. With respect to the motion being heard on OST, I understand that bankruptcy rule 9006 allows the standard 28-day time to be shortened, but not without cause, and I believe that actually the rule, it says, four cause shown. So the inquiry then is what cause was shown to have this motion for the sale of assets heard in such a rushed and hurried way? Well, the trustee's declaration in support of his OST provided three reasons. One, and I'll just read directly from the trustee's declaration. This is an abuse of discretion review point, don't you agree? Abuse of discretion with respect to the approval NOVO with respect to the finding of good faith, Your Honor. Right, I was just focusing on the shortening time. That's abuse of discretion, correct? It is, Your Honor. Thank you. Again, I believe that the order shortening time requires cause. The cause should be something to the benefit of the estate. The cause should not be solely to assist SBC, the potential purchaser of the claims. The three basis justifying or warranting an order shortening time proffered by the trustee are as follows. Excuse me. The trustee states in paragraph five, first, this court denied SBC's request for temporary injunction and stay relief because the court concluded that SBC lacked standing. If this court permits trustee Fox to sell the claims to SBC, this standing problem is cured. Therefore, good cause exists to recover or to resolve whether SBC may purchase the claims from the trustee on shortened time. The only benefit proffered in that is to assist SBC with their standing issues and has no benefit or play in obtaining the best, most optimal price for the estate. Well, the benefit to the estate is ultimately recovery by SBC on the claims against sports, right? Potentially, but as I set forth in my brief, I think that's an illusory purchase. The purchase was based upon zero guaranteed payment. Let's also kind of refocus our argument here today because I need to understand what it is we can actually review given the fact that there was a 363M good, faith finding, and no stay of the sale. So I'm not sure what effective relief we can give you. We can review the good faith and that's about it. Your Honor, I believe if there is a reversal of the finding of good faith, there is a potential for reversing the sale. But we can only look at the good faith. We can't look at whether or not it was the best sale price or not. We can't look at that. Well, I think that all plays into whether or not it was brought in good faith. The arguments alleged by sports in support of its argument of lack of good faith is the trustee's collusion with SBC, part of which was the trustee's complete lack of analyzing the value of the potential claims. The trustee essentially was saying, well, SBC has a judgment for $6 million, so they have a lot of say. But the value of the claims is not based on SBC's judgment. It's based upon the value of the potential claims. If the potential claim was for fraudulent transfer, the value of those claims would be the net value of the fraudulent transfer. If a million dollars of contracts were in fact transferred and there was costs associated with maintaining the contracts and the net value of the benefit to the successor transferee was $20,000, that is the value of the claim. The judgment amount of $6 million is a red herring and is irrelevant to that analysis. The trustee did not do that analysis. Yes. No, you're correct. It's not based on their judgment. That's a different claim. The fraudulent transfer is what's at issue here. But what you're saying it seems like is that the bankruptcy judge had to conduct a mini-trial and really figure out what was the value of these claims in order to approve a settlement or a sale. And that's not required by the bankruptcy code or case law. Agreed, Your Honor. And that is not what I'm saying. I'm saying the trustee had an obligation to do more than to just say, in my business judgment, this is the best offer. The problem is, it's easy to say more, but the question is, how much more? Because there's always more a trustee could do. Respectfully, Your Honor, here the trustee did nothing. So I'm not asking for a lot more. Okay, but then what was the trustee supposed to do? Because there was an email that said, hey, we're going to make an offer of $50,000 in three payments. And then silence. Nobody showed up at the hearing.  I mean, silence from your client. Nobody showed up at the hearing. Nobody showed up at the hearing and said, hey, we have a legitimate offer that we're going to make and give us more time. You know, there was no lawyer. There was not even a representative. The debtor didn't even come. Let me highlight for you a couple of issues with respect to that. The motion was filed on January 26, 2003 on order shortening time. The order shortening time was granted on January 27, which was a Friday. It was granted at 4.57 p.m. on a Friday. And then 12 or 13 days later, there was a hearing, or 8 or 10 days later, there was a hearing. The opposition was required to be filed on February 3rd, which was five business days. And nobody then showed up at the hearing. Motion was never served. It was mailed via U.K. mail. And the issue was not just with my client. It was mailed, but not served. Motion was never mailed. It was never mailed, okay. The order shortening time, the two-page order shortening time, was mailed via regular mail. But the issue, Your Honor, is not just with my client. My client admittedly had knowledge of this hearing, but on nine business days, with an eight-hour time difference, was unable to retain counsel. As an officer of the court, I will submit to you, they contacted my office February 3rd. I did not have time to even speak with them until the following week, I believe on the 11th, and I was retained on the 12th. So Your Honor may not empathize with the plight of my client, but I can tell you, working with my client with an eight-hour time difference has been challenging. So for them to have to retain new counsel for a new, a different entity, on very expedited time, I don't think was for the benefit of the estate. If the trustee's job was to get the best and most optimal price, then we should really take a step back and ask, why are you rushing this process? Why are you preventing other parties who might be interested in having notice or giving them adequate time to respond? Why are we rushing the sale for a non-guaranteed minimum purchase? Now, if it was a large amount, if it was a million dollars, my position would be different, Your Honor. But what they sold, what the trustees sold the claims for, is an illusory promise. They get $0 unless SBC recovers enough first to reimburse for all of its attorney's fees. The trustee presented no evidence of even an estimate of what SBC believed their legal fees could be. If their legal fees were predicted to exceed the net value of these alleged transfers, there would never be any recovery. So I'm not saying the trustee had to do a ton of due diligence inquiry, but they should have asked some basic questions. What SBC do you think the value of a future judgment will be? Do you think you're going to get a judgment against these other entities for a million dollars, for $6 million, for $250,000? I think that is a relevant fact that they should have at least inquired into and should have at least presented to the judge. But as we sit here today, there's nothing in the record that tells you what the trustee or SBC even valued these claims to be. Okay, you're at your five minutes to go, Mark. So if you want to reserve time, you can stop now. I do, Your Honor. Okay, thank you. Thank you. Please go ahead. Good morning, Your Honors. John Forden, McDonnell Crano, representing Apelli, SBC Nevada LLC, and may it please the Court. We ask this Court to dismiss this appeal for lack of jurisdiction because sports lack standing. Sports is not a creditor, and as the Ninth Circuit and federal courts across the country recognize, disappointed bidders do not have standing. You say it's not a creditor. It has a filed proof of claim. Your client's not objected. Nobody else is objected to that claim? Your Honor, if we go and look at the timeline of events, which I think is very important for the Court to consider, on October 23rd, we filed our answering brief challenging this Court's jurisdiction, saying that sports was not a creditor. Then, on October 25th, debtor via Andrew Watt, who is the principal of the debtor, amended the schedules and statements and stated that sports owes a debt. At the same time, Andrew Watt, in charge of sports, files a proof of claim in Claim Number 4. Right before the bar date, correct? Before, but I would... So that's an allowed claim, right? Certainly, Your Honor, but I would point the Court to 845 of the appendix, in which Watt testified at the 341 creditors' meeting, in which Trustee Foxx is engaging with Watt in determining what the estate looks like and is incredulous that sports is paying for debtor. And I point the Court to Trustee Foxx's question. Does Miami Sports have any kind of contract or contractual relationship or any kind of agreement with Miami Gaming? Watt stated it does not. No. At page 340 of the appendix, during the March 29th, 2023, hearing, Judge Nakagawa asked opposing counsel, point blank, let me just ask you this. Are any of your clients, however named, are they creditors in this case? No, they are not. At page 297... All that sounds like it might make for a great claim objection, but none's been filed, correct? Certainly, Your Honor. We would point the Court to Federal Rule of Appellate Procedure 10E, in Barnard v. Lowry, which states that an appellant cannot supplement the record without moving in the court. ECF No. 15 should be completely stricken from the record, because an appellant is not free to simply add additional documents, and they certainly can't do it in... Well, can't we take judicial notice of the simple filing of a proof of claim? Certainly you can, and if you are going to take judicial notice of the adversary record, I would ask the Court to look at the numerous motions that have been filed by SBC in which sports and debtor have obstructed the discovery process. Judge Brand, you made an excellent point, which is there has been no stay requested in this court, yet there are significant and salacious allegations slung at Tanakagawa as well as the trustee over collusion and improper conduct, but yet this court can look at the record, and where is such collusion? Where is such problems of bad faith? Instead, what you're seeing is the business judgment of a trustee who had already taken a 341 creditor's exam, who had already done a 2008 exam, and just days prior had opposed SBC. He challenged our standing with our TRO request. We had just been adversaries. We got on the phone. We negotiated a deal. If the court looks at the in re Mickey Thompson, the nature of the deal has been approved for decades in the Ninth Circuit. The nature of the purchase and sale agreement has been approved by courts, and we complied with that. As you look at the business judgment that the trustee set, 90% of the estate is SBC. We have given due consideration that we get to go collect, or that 90% of the estate is gone, and that's good value. What about the lack of service? That's troubling, especially for a good faith finding. The lack of service, I think, is a red herring, Your Honor, because of, again, what Judge Brand pointed out. If it looks at pages 259 to 63, Watt clearly is on notice, and the debtor did receive service. That's the question. Well, the creditors are supposed to receive service, too, and also potentially other bidders, and no one got noticed. I think you also need to address, after you finish this, the rushed nature of the proceeding, too. Certainly, Your Honors, and this is, again, where I would ... I'm stuck between a rock and a hard place with a record that began on July 11th, and a record that has continued since. I do hope judicial notice is taken, and you can see in the record that as all of this is going on, sports is negotiating with some of the largest casinos in Nevada, and changing their contracts, and doing all kinds of things, and moving their assets. I realize that's a dispute below, but my point is, we understood. We had litigated with this entity, with Watt, and with Benner, and with the debtor. Now they've erected sports, and we've moved to protect the estate, and moved to protect our interests. When it comes to the service issue, sports can't make arguments for other creditors. Sports also wasn't a creditor until October 23rd, 2023. When the 341 creditors meeting occurred, the sale hadn't taken place. The trustee was asking questions about who all were the creditors, so there was no reason to put sports specifically on notice, but again, that's a red herring because Watt was on notice. Watt made a bid on behalf of all the MIAMI entities. The trustee instructed Watt to oppose the motion, and Judge Brand, I take your point, and I think that Watt, Benner, or whoever should have come to the hearing and said, I want to bid. This hearing was conducted telephonically. None of the hearings in this matter below have ever occurred in this courthouse. Mr. Watt and Mr. Benner have come to those hearings and appeared on Zoom. Yes, it occurred on a shortened basis, but again, the court is stuck with a clearly abusive discretion standard, and where I think has been lost and wasn't addressed below, it wasn't addressed in the answering brief, and it wasn't addressed in the reply brief. That's the A and C factors. So even if we go back down below and we enter into a bidding process, the paramount interest of the creditors will subsume and make it impossible for sports' offer to be better than SBC's. My friend and colleague, Mr. Works, said that at the original sale order. We put it in our opposition to the motion to reconsider. It was never addressed in the reply brief. It was never addressed at the hearing. It was never addressed in the briefing to this court. That argument is waived, and therefore, it can't be a clearly abusive discretion for Judge Nakagawa to enter this sale order. And so I do want to return to jurisdiction for just a second, and it is because of the We do intend to object to the claim, and in fact, we have moved to amend our pleadings because under 11 U.S.C. 547, these transfers can be avoided. And so I don't believe that the claim number four actually will provide support standing, and the nature of all of what has happened, the direct questions that were made to Watt under penalty of perjury, that were made to counsel, and then all of a sudden, we've just determined that there's a loan, and we don't have all of the banking information. We don't have all of the information. And so if there are any further questions, I'm happy to answer them, but I don't really think jurisdictional argument is a good off-ramp for the court. Okay. So just to follow up on Judge Brand's question, which I believe, and I'm sorry if I missed your answer to it, was with the lack of the service of the motion on parties, does that impact the good faith finding? I don't think it does, Your Honor. And the reason why is because somebody should have stood up and done something. Somebody should have come to the hearing that... Of course, people who don't have service or notice don't know there's a hearing. But only sports is here. There isn't any other entity out here, and sports was on notice. We know that sports was on notice because sports put in their reply brief to their motion to reconsider the email traffic between the trustee and sports. And so that's the question, and standing is really the question here, is there's a lot of arguments here. And there were a lot of arguments in the district court, or in the bankruptcy court, that sports were making on behalf of a lot of other people, but the question is sports. If sports is taking the position that everybody's separate and everybody's different, they're a disappointed perspective bidder. Debtor needed notice, and debtor got notice, and we know that because Mr. Zerzow sent an email to his clients and explicitly said, I only represent the debtor in the bankruptcy proceeding. You need to get other counsel. And then Mr. Watt showed that he knows how to object and did that. And so, again, I don't think the service issue affects the good faith finding. Are there any further questions, or I can rest on our briefing? No, nothing further. Thank you. Thank you very much. Thank you. Thank you, your honors. Okay, Ms. Kung, I believe you've got five minutes left. Thank you, your honors. There is nobody else here today, because nobody else has had notice of these proceedings. To say the fact that nobody else came here to object is, quite honestly, just a little spurious of a statement. The trustee did receive another offer from a third party for $75,000 post this. That was not related to my client. My client is here because my client has notice of these proceedings. I just want to address a few statements which I think are problematic. Now, SBC has alleged that sports was not a creditor previously. Sports has always been a creditor. Just because a proof of claim had not been filed evidencing the claim does not change the fact that sports was a creditor. Mr. Watt's testimony, I believe, at 341 was cited, right? I mean, there was at least a time that it didn't sound like sports was a creditor. The question was not ever, was there any debt owed? The question was, are there any contractual agreements? We can bring Mr. Watt in here, and we can question him and ask him, do you consider a debt to be a contractual agreement? We must have the backdrop that they operate under U.K. law. I've had to learn new rules and new terminology that we don't use here. So our terminology does not necessarily translate to what they believe or what they say. And I think that having SBC cherry-pick and take statements out of context and say that they mean things that they don't mean is not appropriate, and it's not the issue on appeal. The issue on appeal, one of the issues on appeal, is there was no service. With regards to sports, we've addressed that. And I think Jeff Brand has acknowledged that what about all the other parties? If the ultimate goal is to get the best and ultimate, best optimal price for the estate, doesn't it make sense to give other potential interested parties notice, which just didn't happen here? With regards to the Mickey Thompson case, which counsel has cited as, we've approved these types of deals for decades in the Ninth Circuit, the Mickey Thompson case is completely an apposite, Your Honor. That case was a review of a 90-19. It was a settlement based on a sale under a 90-19. Counsel keeps bringing up this 90-19 argument, and I set forth in my reply, I'd love to address the 90-19 argument, but we've never gotten there. If they would have addressed that in the lower court, then we would be addressing it here. But because of the fact that the lower court never considered it, because the trustee never considered sports offer as a genuine offer, that whole argument is a red herring and an apposite here. I want to go back to the trustee. Sports did not file an opposition, and they did not show up at the hearing. But they did notify the trustee that they opposed. They did notify the trustee of their offer, and the trustee never said to them, you must file an opposition. Rather, the trustee in his email said, your offer is under consideration. You are free to obtain counsel and file an opposition if you deem appropriate or necessary, I think was the language. Sports was entitled to rely on the trustee with a fiduciary obligation to the estate. The trustee was believed by sports to be a neutral third party, not just an appendage for SBC. Knowing what sports knows now, perhaps they would have acted much more strongly to protect its interest. But they firmly believed at this time, and again, on a nine business day window, that the trustee was like an officer of the court. They believed that the trustee was just going to not go forward with the sale that they noticed, because he wrote in the email, please feel free to file an opposition. They believed that the trustee was going to honor his statement that your offer is under consideration. And because of that, they decided not to bother to phone into the hearing? They believed, again, eight hour time difference, they're not versed in Nevada law, they had not retained counsel, they had tried to retain counsel and had not retained counsel. I'm not going to excuse the fact that they didn't appear. What I'm stating forth to you is the fact that they reasonably believed that the trustee was a neutral third party that was going to ensure that everything was handled appropriately and that their offer would be disclosed as an offer, but not as a alleged offer or a purported offer. They believed that if the trustee wanted to know the impetus of funds, the trustee would have asked. They believe that if the trustee wanted proof of funds, the trustee would have asked. They believe that if the trustee had any questions or concerns about its offer, the trustee would have asked. And I believe a truly neutral trustee would have, but that's not what happened here, Your Honors. Any further questions? No. Thank you very much. Thank you, Your Honors. The matter is submitted and we'll get you a written decision in due course. Thank you, Your Honors. Thank you. That's the last argument case, so the Court's adjourned. All rise. This Court is now adjourned.
judges: Faris, Brand, and Niemann